UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

DELA YADOR,

                Plaintiff,         **<u>MEMORANDUM & ORDER</u>**
                                            19-CV-4128(EK)(RML)

        -against-

JASON MOWATT,

                Defendant.

------------------------------------x

ERIC KOMITEE, United States District Judge:

      This is a dispute concerning the control of a business called Trap Karaoke.  According to Plaintiff Dela Yador, Trap Karaoke is an entity offering "Hip-Hop karaoke" experiences at venues around the country.  Amended Complaint ¶ 1, ECF No. 19 ("Compl.").  Plaintiff claims he and defendant Jason Mowatt were partners in the venture, and that Mowatt breached their agreement by dispossessing Plaintiff of his interest.  Defendant claims they were never partners — and that even if they were, the partnership (and his duties to Plaintiff) ended before any breach of a legal obligation occurred.

      Plaintiff has sued for breach of contract, breach of fiduciary duty and the duty of loyalty, and unjust enrichment. He seeks $3 million in damages, an accounting of partnership property, and injunctive relief regarding the use of partnership

1

property.  Defendant moves to dismiss under Rule 12(b)(6).  For

the reasons set forth below, I deny the motion.

## I.    Background

          The facts set out below are drawn from the complaint

and the screenshots of emails, text messages, and webpages

reproduced therein.  I assume the truth of the allegations in

the complaint and construe them liberally in light of

Plaintiff's *pro se* status.

          Plaintiff claims that he and Defendant formed a

partnership in early 2015.  Compl. ¶ 1 (partnership was formed

in "winter 2015"); *see also id.* ¶ 15 (parties "entered into a

partnership via oral agreement on or about March 15, 2015").

The relationship began when Plaintiff presented the idea of "Hip

Hop Karaoke" to Defendant.

          In the ensuing months, the parties "work[ed] together"

to "build the [Trap Karaoke] brand and name."  *Id.* ¶ 20.  They

divided responsibilities: besides providing the "original idea,"

Plaintiff made an "introduction to his network" and connected

the brand with "sponsorship opportunities"; Defendant,

meanwhile, offered "technical strategy" and "interact[ed] with

. . . venues."  *Id.* ¶ 3.  Both parties contributed "financing

for one of the first Trap Karaoke shows" and "shared duties"

related to event management.  *Id.* ¶¶ 3, 18; *see also id.* ¶ 22

(Plaintiff "provided funding to the business in order to secure

shows"). And they shared the profits from the venture, in the form of "payment from show receipts." *Id.* ¶ 18.

In December 2015 (at least nine months after Plaintiff alleges the partnership was formed), Defendant created a limited liability company called "Trap Karaoke, LLC." *Id.* ¶ 6. The parties continued to discuss ownership percentages in the LLC through at least January 2016, when Defendant told Plaintiff they would each own thirty-percent interests, with the remainder to be shared among three of Defendant's associates. *Id.* Defendant sent Plaintiff the LLC "paperwork" by text message on January 13, 2016. *Id.* The complaint does not say whether Plaintiff executed or returned his copy of the LLC agreement. Ultimately, however, Defendant declined to confer the benefits of LLC membership on Plaintiff. *Id.* ¶ 27 ("Despite assurances from the Defendant that Trap Karaoke, LLC is an equal partnership, the defendant has used the LLC as a tool for his tortious conduct.").

The parties dispute whether the formation of the LLC terminated the partnership. Defendant argues that it did. Def.'s Reply Br. at 5, ECF No. 22 (dissolution occurred on "December 24, 2015, the date Trap Karaoke, LLC was formed."). But Plaintiff claims the LLC became "partnership property," because the partnership preceded the LLC. Compl. ¶ 6.

The parties continued working together after the LLC was formed. They sat for an interview about Trap Karaoke together in January 2016. *Id.* ¶ 21. Defendant included Plaintiff on emails regarding the business. *Id.* ¶ 19. Defendant also publicly praised Plaintiff's contributions to Trap Karaoke. *Id.* ¶ 23 (Twitter post dated February 14, 2016). And he continued to refer to Plaintiff as his "partner," including in February 2016. *Id.* ¶ 19 (email dated February 8, 2016).

The parties' relationship soured shortly thereafter. Plaintiff claims Defendant began breaching his partnership duties to Plaintiff in "Spring 2016." *Id.* ¶ 26. Specifically, Plaintiff alleges that Defendant blocked Plaintiff from accessing partnership information, accounts, and funds, and denied him an equal share of the partnership profits and management rights. *Id.* ¶¶ 27-28.

## II. Standard

Only a "plausible" claim for relief survives a 12(b)(6) motion to dismiss. *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 476 (2d Cir. 2009). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662,

4

678 (2009)).  Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

The Court must construe a *pro se* complaint with "special solicitude" and interpret it to raise the "strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bur. of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006).  Nevertheless, "the basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike." *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019) (internal quotation marks omitted).

### III. Analysis

Plaintiff brings claims for breach of contract (the oral partnership agreement), breach of fiduciary duty and the duty of loyalty, breach of the implied covenant of good faith and fair dealing, and unjust enrichment.  Many of these claims presuppose the existence of a partnership, which Defendant claims never existed.  Thus, I consider this question first, before turning to the claims themselves.

### A.   Whether a Partnership Exists

Plaintiff's breach-of-contract and fiduciary duty claims rest on the assumption that a partnership existed at the time of the alleged breaches.  Two questions arise: whether a partnership existed; and if one did, whether (and when) it dissolved.  *See, e.g.*, *Fisher v. Tice*, No. 15-CV-955, 2016 WL

4626205, at *20 (after an at-will venture dissolves, a defendant "cannot be liable . . . for breach of contract or breach of fiduciary duty" for subsequent actions) (Freeman, M.J.).  I address each question in turn.

1.    <u>Whether the Parties Formed a Partnership</u>

Plaintiff adequately alleges that the parties formed a partnership in early 2015.  Under New York law, a partnership is defined as "an association of two or more persons to carry on, as co-owners, a business for profit."  N.Y. P'ship Law § 10 (McKinney 2021).  In determining whether a business relationship constitutes a legal partnership, "the relevant factors are (1) the parties' intent, whether express or implied; (2) whether there was joint control and management of the business; (3) whether the parties shared both profits and losses; and (4) whether the parties combined their property, skill, or knowledge."  *Hammond v. Smith*, 151 A.D.3d 1896, 1897 (4th Dep't 2017).  "No single factor is determinative; a court considers the parties' relationship as a whole."  *Id.*  Profit sharing, however, constitutes prima facie evidence of the existence of a partnership.  *See* N.Y. P'ship Law § 11 ("The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business . . . .").

Plaintiff alleges that his relationship with Defendant bore each of these characteristics.  He alleges that Defendant

held him out to the public as his partner (intent); they divided "duties of event management" (control); and they shared "profits, including . . . payment from show receipts." Compl. ¶¶ 3, 18.  Plaintiff also alleges that he contributed the initial idea, services, and cash to the business.  Thus, Plaintiff has adequately alleged that the parties formed a partnership in early 2015.

2.  Whether (and When) the Partnership Dissolved

Having alleged the existence of a partnership, the question becomes whether the partnership continued to exist when the alleged breaches occurred, beginning in Spring 2016.

The partnership alleged in the complaint was terminable "at will" because it was formed through an oral agreement and Plaintiff alleges no meeting of the minds regarding its duration.  *See Prince v. O'Brien*, 234 A.D.2d 12, 12 (1st Dep't 1996) ("An oral agreement to form a partnership for an indefinite period creates a partnership at will.").  Partners may dissolve an at-will partnership "on a moment's notice."  *Shandell v. Katz*, 464 N.Y.S.2d 177, 179 (1st Dep't 1983).  Dissolution of the partnership occurs when either partner "manifests an unequivocal election to cease the collaboration."  *Scholastic, Inc. v. Harris*, 259 F.3d 73, 87 (2d Cir. 2001) (internal quotations omitted); *see also* N.Y. P'ship Law § 62 (absent agreement to the contrary, a partnership is

dissolved "[b]y the express will of any partner").  That
election can manifest through "conduct as well as words."
*Scholastic, Inc.*, 259 F.3d at 87 (quoting *Bayer v. Bayer*, 215
A.D. 454, 473 (1st Dep't 1926).

Defendant argues that, even reading the complaint in
the light most favorable to Plaintiff, the allegations clearly
demonstrate Defendant's unequivocal election to terminate the
partnership.  Defendant points to the allegations that he
refused to share proceeds and blocked Plaintiff from accessing
partnership information.  Courts have held that similar actions
trigger dissolution.  *See, e.g.*, *Cracco v. Cracco*, 25 A.D.2d
660, 660 (2d Dep't 1966) (defendant's "refusal to continue to
pay" plaintiff's share of "the proceeds of the partnership" or
to "account to plaintiff" manifested "an unequivocal election
. . . to dissolve the partnership at will"); *Slinin v. Shnaider*,
No. 15-CV-9674, 2017 WL 464426, at *2 (S.D.N.Y. Feb. 2, 2017)
(at-will partnership dissolved when partner rejected accounting
request and told partner he "owed [him] nothing"); *Carola v.
Grogan*, 102 A.D.2d 934, 934 (3d Dep't 1984) (partner dissolved
at-will partnership by removing files, books, and office
equipment from the business without the consent of other
partners).  Defendant also points to Plaintiff's statement that
he (Plaintiff) was "ousted" from the partnership when Defendant
"instigated Trap Karaoke LLC paperwork for [him] to sign, then

8

moved forward without Plaintiff's signature. . . ."  Pl.'s Br.
Opposing Dismissal at 5, ECF No. 21.  Defendant does not,
however, identify the precise date on which the dissolution-by-
conduct occurred, in his reading of the allegations.

        For his part, Plaintiff alleges that the partnership
still exists.  Compl. ¶ 2 (from the formation of the partnership
"until present . . . [Plaintiff and Defendant] have operated in
a general partnership . . . .").  He points to various actions
post-dating the LLC's formation that suggest the partnership
survived past that date — Mowatt copied Plaintiff on business
emails, *id.* ¶ 19 (email dated January 11, 2016); sat with
Plaintiff for joint interviews about the business, *id.* ¶ 21
(article dated January 25, 2016); referred to Plaintiff as his
"partner," *id.* at ¶ 19 (email dated February 8, 2016); and
praised Plaintiff as part of "the squad," *id.* ¶ 23 (Twitter post
dated February 14, 2016).  And Plaintiff specifically alleges
that the formation of Trap Karaoke LLC did not cause the
dissolution of the partnership; to the contrary, according to
the complaint, Trap Karaoke LLC *became* partnership property.
*Id.* ¶ 6.

        Read fairly, the complaint portrays defendant Mowatt
as sending mixed signals (at least) regarding his intentions
towards the partnership, well beyond the formation of the LLC.
In the end, it is not apparent from the pleadings that

Defendant's actions were so "unequivocal" that they had the effect of terminating the partnership.  Even if those actions became unequivocal at some point, it is unclear from the complaint when that point was.  *Scholastic, Inc.*, 259 F.3d at 87 ("If — and when — the joint venture was dissolved is a prototypical fact question that a jury must determine."); *Sagus Marine Corp. v. Donald G. Rynne & Co.*, 207 A.D.2d 701, 702 (1st Dep't 1994) (summary judgment improper because issue of fact existed as to when joint venture was dissolved).

**B.   Breach of Contract**

Plaintiff claims that Defendant breached their "oral partnership agreement" by "undercutting" Plaintiff's partnership interests and "appropriating" them for himself.  Compl. ¶¶ 41, 44.  To make out a viable claim for breach of contract in New York, a complaint must allege "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages."  *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004).

Plaintiff has alleged the existence of a partnership, as discussed above.  Thus the question is whether Plaintiff has adequately alleged a breach.  Defendant suggests that partners cannot breach at-will partnerships because, when they act in a manner inconsistent with their partnership obligations, those

actions have the effect simply of dissolving the partnership. But this does not mean that at-will partners are absolved from all liability for any act occurring before the partnership ended. *See* N.Y. P'ship Law § 69(2)(a)(II) ("When dissolution is caused in contravention of the partnership agreement[,] . . . [e]ach partner who has not caused dissolution wrongly shall have . . . [t]he right, as against each partner who has caused the dissolution wrongly, to damages for breach of the agreement."); *cf., e.g.*, *Rella v. McMahon*, 169 A.D.2d 555, 555 (1st Dep't 1991) (denying summary judgment on claim asserting breach of at-will partnership). And for the reasons stated above, the question of whether (and when) the partnership ended requires discovery to resolve.

Moreover, even if the actions constituting Defendant's alleged breach did have the effect of terminating the partnership agreement, Plaintiff may still be entitled to relief in the form of an accounting and his "distributive share" of the partnership's assets upon termination. When a partnership dissolves, or one or more partners are "expelled," the departing partners are entitled to receive "in cash . . . the net amount due [them] from the partnership." N.Y. P'ship Law § 69. That includes that partner's share of all partnership property — tangible and intangible. *Id.* § 71; *Wittels v. Sanford*, 137 A.D.3d 657, 658 (1st Dep't 2016) (partners are entitled their

"distributive share" of the partnership interest at dissolution); *Dwyer v. Nicholson*, 193 A.D.2d 70, 72-73 (2d Dep't 1993) (partnership's pending "contingency fee cases and similar intangible firm assets" were subject to distribution at dissolution, absent agreement to the contrary).

For the foregoing reasons, Plaintiff has adequately alleged that Defendant breached their oral partnership agreement and that he may be entitled to money damages in connection with the breach.

## C.  **Breach of Fiduciary Duty**

Plaintiff also claims that Defendant breached his fiduciary duty and duty of loyalty to Plaintiff.  Because "the duty of loyalty encompasses one subset of the many duties that a fiduciary owes to his agent," I analyze these claims together. *Nicholsen v. Feeding Tree Style, Inc.*, No. 12-CV-6236, 2014 WL 476355, at *4 (S.D.N.Y. Feb. 6, 2014).

Plaintiff adequately alleges that Defendant breached his fiduciary duty to Plaintiff.  Partners owe fiduciary duties to one another.  *See Tucker v. Anthony Realty Corp.*, 888 F.2d 969, 972-73 (2d Cir. 1989); *see also Ebker v. Tan Jay Int'l Ltd.*, 741 F. Supp. 448, 469 (S.D.N.Y. 1990) ("[T]he fiduciary relation between partners terminates upon notice of dissolution, even though the partnership affairs have not been wound up."). This means that partners owe each other "a duty of undivided and

undiluted loyalty." *In re Estate of Wallens*, 9 N.Y.3d 117, 122 (2007).  Here, Plaintiff alleges that Defendant breached that duty by converting the partnership's assets — including its "idea[s]" and "the Trap Karaoke name," Compl. ¶¶ 57-58, — to his own use; marketing Trap Karaoke as his own; and concealing profits.  Thus, Plaintiff has stated a claim for breach of fiduciary duty.

Defendant does not dispute that these actions would constitute a breach of fiduciary duty (if a partnership existed).  Instead, he argues that Plaintiff's claim is barred by the statute of limitations because Plaintiff brought this claim more than three years after the breach began in "Spring 2016."  But Plaintiff alleges that the breach remains ongoing, as noted above.  *See* Compl. ¶ 2 ("From [winter of 2015] until present, . . . [Plaintiff and Defendant] have operated in a general partnership . . . .").  The precise date of termination remains to be determined.  And it remains unclear whether the "continuing-wrong doctrine" may have tolled the limitation period on Plaintiff's claim, even assuming a three-year limitation period applies.[1]  *See Butler v. Gibbons*, 173 A.D.2d

---

[1] Under New York law, the statute of limitations for breach-of-fiduciary-duty claims depends on whether the Plaintiff seeks damages (three years) or injunctive relief (six years).  *See Kaufman v. Cohen*, 307 A.D.3d 113, 118 (1st Dep't 2003).  Where, as here, a plaintiff seeks both forms of

352, 353 (1st Dep't 1991) (defendant's "repeated and continuing
failure to account and turn over proceeds" was continuing wrong,
and explaining that "a new cause of action accrued each time
defendant collected [proceeds] and kept them to himself");
*Underwood v. Trump*, 88 N.Y.S.3d 830, 838 (N.Y. Sup. Ct. 2018)
(continuing-wrong doctrine applied where plaintiff alleged
"continuous and pervasive failure to operate and manage the
[business] in accordance with . . . fiduciary obligations").
Defendant's motion to dismiss the fiduciary-duty claim is
therefore denied.  *Cf. Butler*, 173 A.D.3d at 353 (fiduciary-duty
claim was not barred as to proceeds withheld during limitations
period)*.*

D.   **Accounting**

        In any event, even if Defendant terminated the
partnership before breaching it, Plaintiff — as an alleged
partner in the business — is entitled to an accounting of his
interest at the time the alleged partnership dissolved.  New
York law "provides that partners are entitled to an accounting

---

relief, "case law provides no clear guidance on which limitations period is
applicable."  *Id.* at 118-19.  Defendant contends that the shorter period
applies because Plaintiff primarily seeks damages.  *See IDT Corp. v. Morgan
Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 139-40 (2d Dep't 2009) (applying
three-year statute of limitations where plaintiff sought "hundreds of
millions of dollars" and the equitable remedy of disgorgement).  This bars
Plaintiff's fiduciary-duty claim, Defendant argues, because the breach
occurred "beginning [in] Spring 2016," which is over three years before
Plaintiff commenced this action on July 19, 2019.

of a partnership following its dissolution." *Scholastic, Inc.*,
259 F.3d at 90; N.Y. P'ship Law § 74 (a partner's "right to an
account of his interest" in the partnership "accrue[s] . . . as
against the winding up partners . . . at the date of
dissolution, in the absence of agreement to the contrary").  To
obtain an accounting, a plaintiff must show "(1) the existence
of a partnership, (2) the transaction of business by the
partnership producing profits or losses to be accounted for,
(3) the termination or dissolution of the partnership, (4) a
demand for an accounting, and (5) a failure or refusal by
[another] partner . . . to account to the other partner or
partners." *Arrants v. Dell Angelo*, 73 A.D.2d 633, 633 (2d Dep't
1979).

Plaintiff alleges all these elements.  And when a
partnership dissolves, each partner is entitled to the cash
value of his share of partnership property, as discussed above.
N.Y. P'ship Law § 71; *see also Goldberg v. Goldberg*, 59 A.D.2d
668, 668 (1st Dep't 1977) (partners are entitled to receive
their share of retained earnings and receivables upon
dissolution, in addition to any other partnership assets).
Where, as here, "there is no oral or written partnership
agreement, the partnership's profits are split . . . and all the
partnership property is considered an asset." *Sriraman v.
Patel*, 761 F. Supp. 2d 7, 18 (E.D.N.Y. 2011).  The complaint

adequately alleges that Plaintiff is owed his share of profits
prior to any dissolution and, perhaps more importantly, his
share of the fair value of the partnership's assets upon any
dissolution — including the business's intellectual property.
Thus, Plaintiff's request for an accounting (and related relief)
survives.[2]

Defendant argues, in supplemental briefing, that
intellectual property is not a distributable asset upon
dissolution of a partnership. *See* Def.'s Supp. Ltr. at 2.  But
the case Defendant cites for that proposition actually stands

---

[2] In its supplemental letter, Defendant argued that New York law
requires the Court to conduct a full accounting — an equitable remedy —
before turning to Plaintiff's legal claims in the first instance.  Def.'s
Supp. Ltr. at 1-2, ECF No. 24.  But it remains unclear, at this preliminary
stage of the litigation, what the measurement date for the accounting would
be, given that the parties disagree on whether (and when) the partnership
dissolved.  *See* N.Y. P'ship Law § 74 (the "right to an account of [one's]
interest" accrues "at the date of dissolution").  This question needs to be
decided before a full accounting can proceed.

It is likely that most, if not all, of the contested issues in this
case would need to be decided in the context of an accounting.  If, for
example, the accounting would need to establish the value of Plaintiff's
claim for breach of fiduciary duty, then it is not clear how an accounting
would differ very much from an ordinary trial of Plaintiff's claims.  Thus,
it is likely the case should simply proceed to discovery in the ordinary
course.  Defendant shall submit a letter of no more than ten pages by October
15, 2021 in respect of the argument that an accounting must precede
resolution of Plaintiff's other claims.  The letter should address: (1) how
and when this Court should determine the measurement date for an accounting;
(2) the scope of the accounting, and the nature of any evidence Defendant
anticipates submitting; and (3) the remedy, if any, that Defendant may seek
at the conclusion of such accounting.  Plaintiff shall submit a reply by
November 1, 2021.  Given the complexity of these issues, the Clerk of Court
is directed to undertake efforts (through the *pro se* office) to obtain pro
bono counsel for Mr. Yador.  Plaintiff is advised that the Court cannot
require an attorney to take a pro bono case, but can only solicit a
volunteer.

for the contrary principle.  In *Dawson v. White & Case*, 88
N.Y.2d 666 (1996), the Court of Appeals began with Judge
Cardozo's recognition that "[g]ood will, when it exists as
incidental to the business of a partnership, is presumptively an
asset to be accounted for like any other."  *Id.* at 671 (quoting
*Matter of Brown*, 242 N.Y. 1, 6 (1926)).  The court went on to
hold that the law firm had agreed to override this presumption,
by (among other things) including specific provisions in its
partnership agreement.  *Id.* at 672.[3]  No such allegation is made
here.

Any accounting will therefore need to address the
question of intangible assets — including the possibility that
Trap Karaoke's assets included a trademark (in the Trap Karaoke
name); an intellectual property interest in any authorship
(including original music or dramatic work); and any "goodwill"
as discussed above.  *See, e.g.*, *Rice v. Baggot*, 7 N.Y.S. 518

---

[3] Those provisions stated:

"'It is expressly understood and agreed that no
consideration has been or is to be paid for the Firm name
or any good will of the partnership, as such items are
deemed to be of no value' (art fourth [c])"; and

"'The computation of the amount with which a Former
Partner shall be charged or credited . . . shall exclude
any value for the good will of the partnership or the Firm
name, as such items are deemed to be of no value' (art
sixth [d])."

*Id.*

(1st Dep't 1889) (considering, at dissolution, partner's diversion of former customers in estimating the amount to be charged for the partnership's good will); *see also Moore v. Johnson*, 108 A.D.3d 1125, 1126 (4th Dep't 2013) ("Good will, when it exists as incidental to the business of a partnership, is presumptively an asset to be accounted for like any other . . . ."); *Murov v. Adez*, 786 N.Y.S.2d 79, 80 (2d Dep't 2004) (accounting for value of contingent-fee case upon dissolution of law firm); *Tarulli v. Rocchio*, 270 A.D. 1023, 1023 (2d Dep't 1946) (the partnership's "business name" and "good will" were "asset[s]" subject to accounting).

Defendant argues that Plaintiff's Trap Karaoke idea does not constitute intellectual property because the idea for Trap Karaoke ceased being secret once shows started running. *See, e.g.*, *LinkCo, Inc. v. Fujitsu Ltd.*, 230 F. Supp. 2d 492, 498 (S.D.N.Y. 2002) ("[T]here can be no trade secret protection, as a matter of law, if the secrecy is necessarily lost when the design or product is placed on the market." (citation omitted)). Defendant also contends that the idea for Trap Karaoke was not a "formula, pattern, device or compilation of information" that "gives [the owner] an opportunity to obtain an advantage over competitors who do not know how to use it." *Ashland Mgmt. Inc. v. Janien*, 82 N.Y. 2d 395, 407 (1993).

18

This assertion ignores the law of trademark, which may protect the value in the Trap Karaoke name, and also of copyright, which protects "artistic expression . . . regardless [of] whether considered private or secret." *New Era Publ'ns Int'l, ApS v. Henry Holt & Co., Inc.*, 695 F. Supp. 1493, 1504 (S.D.N.Y. 1988); *see also Palatkevich v. Choupak*, Nos. 12-CV-1681, 12-CV-1682, 2014 WL 1509236, at *6 (S.D.N.Y. Jan. 24, 2014) (one "may obtain copyright protection before registering [a] copyright"). In any event, the precise contours of Plaintiff's "expression" of the Trap Karaoke idea remains to be developed in discovery. *Cf. Kregos v. Assoc. Press*, 3 F.3d 656, 663 (2d Cir. 1993) ("[C]opyright does not protect an idea, but only the expression of an idea."). At this stage, Plaintiff has alleged enough to survive dismissal.

## E.   Unjust Enrichment

Plaintiff also alleges a claim for unjust enrichment. The elements of this claim are "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006). Here, Plaintiff alleges that Defendant used Plaintiff's idea for Trap Karaoke, passed it off as his own, and shut Plaintiff out of the profits. Whether Plaintiff "gave up on both the original idea" and the business, as Defendant

argues, is a question of fact.  Mot. to Dismiss at 12, ECF No. 20-1.  Plaintiff has therefore alleged an unjust-enrichment claim.

Defendant argues that Plaintiff's unjust-enrichment claim should be dismissed as duplicative of his breach-of-contract claim.  This argument is unpersuasive at this stage. "While a party generally may not simultaneously recover upon a breach of contract and unjust enrichment claim arising from the same facts, it is still permissible to plead such claims as alternative theories." *Singer v. Xipto Inc.*, 852 F. Supp. 2d 416, 426 (S.D.N.Y. 2012).  Defendant's motion to dismiss Plaintiff's claim for unjust enrichment is therefore denied.

### IV.  Conclusion

For the reasons set out above, Defendant's motion to dismiss is denied.  The parties are directed to submit the letters described in Note 2, above, regarding next steps.  The Clerk of Court is directed to undertake efforts to appoint an attorney from the Pro Bono Panel to represent Mr. Yador.  A status conference is scheduled for November 12, 2021 at 11:00 a.m. by telephone.  The parties are directed to call 888-808-

6929 five minutes before the scheduled start of the conference

and use access code 564-7824.


        SO ORDERED.

                /s Eric Komitee_____
                ERIC KOMITEE
                United States District Judge


Dated:     September 30, 2021
            Brooklyn, New York