```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

 DELA YADOR,

                    Plaintiff,              MEMORANDUM & ORDER
                                            19-CV-4128 (EK)(RML)
             -against-

 JASON MOWATT,

                    Defendant.

-------------------------------------x
```

ERIC KOMITEE, United States District Judge:

A jury found Jason Mowatt liable for breaching a partnership agreement with Dela Yador, and awarded Yador damages of just under $2 million.

Mowatt has now filed two post-trial motions. First, he seeks a ruling that, under New York's Partnership Law, the jury's verdict on damages — but not liability — must be treated as advisory, and that the *Court* will instead proceed to determine Yador's recovery via an equitable accounting. Second, he moves for a judgment as a matter of law on a single issue: the termination date of his partnership with Yador.[1] While the jury found that the partnership ended on September 18, 2017,

---

[1] Under Federal Rule of Civil Procedure 50, "judgments as a matter of law in jury trials may be entered . . . with respect to *issues* . . . that may not be wholly dispositive of an entire claim or defense." 9B Charles Wright & Arthur Miller, *Federal Practice and Procedure* § 2521 (3d ed. Supp. 2025) (emphasis added).

Mowatt asserts the partnership ended no later than October 24, 2016 — eleven months earlier.

The Court presumes the parties' familiarity with the procedural and factual background of this case. For the reasons outlined below, Mowatt's motions are denied.

### I. The Motion for an Accounting

#### A. The Accounting Motion Is Neither Forfeited Nor Untimely

Before addressing the merits of Mowatt's motion for a judicial accounting, Yador argues that the request is forfeited (based on equitable principles) and untimely under Federal Rule of Civil Procedure 39. *See* Pl.'s Opp'n Br. 14-22, ECF No. 181-24.[2] The Court disagrees on both fronts.

1. Mowatt Has Not Forfeited the Right to Bring an Accounting Motion

Mowatt has not forfeited the right to bring this motion. Forfeiture requires the "failure to make the timely assertion of a right." *Patterson v. Balsamico*, 440 F.3d 104, 112 (2d Cir. 2006).[3] But Mowatt has argued at each major stage

---

[2] Yador technically argues that Mowatt "waived" his right to seek an accounting. Pl.'s Opp'n Br. 14. But this conflates waiver and forfeiture. Waiver is the "intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993). Yador is not arguing that Mowatt intentionally forwent the right to seek an accounting. Rather, he is arguing that Mowatt relinquished that right by failing to assert it in a timely manner. Pl.'s Opp'n Br. 14. "Where a litigant's action or inaction is deemed to incur the consequence of a loss of a right, . . . the term 'forfeiture' is more appropriate." *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61 (2d Cir. 1999).

[3] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

2

of this litigation that an equitable accounting must precede a legal action for breach of a partnership agreement.

For example, in a letter filed after oral argument on his motion to dismiss, Mowatt wrote that "no action at law may be maintained prior to an accounting" under New York law.  *See* ECF No. 24, at 2.  Similarly, in his memorandum in support of summary judgment, he argued that "[i]f there ever was a partnership here, . . . the only remedy available [to Yador] is an accounting."  *See* ECF No. 81-2, at 24.  And after the jury concluded that Mowatt and Yador had indeed been partners, but before the damages award, Mowatt filed another letter arguing that the Court should treat any damages verdict as advisory, because the only available remedy for breach of the partnership agreement was an accounting.  *See* ECF No. 149, at 3.

Yador's contrary argument relies primarily on *Josephson v. Marshall*.  *See* Pl.'s Opp'n Br. 15-18.  In that case, which also involved a breach-of-contract claim between partners in a joint venture, the court found that the defendants had forfeited the right to seek a post-trial accounting. No. 95-CV-10790, 2002 WL 1315604, at *1-2 (S.D.N.Y. June 17, 2002).  This was because, up until trial, the defendants had exclusively argued that no joint venture had existed in the first place.  *Id.* at *2.  It was not until the close of their case-in-chief that the defendants "allow[ed] for the possibility

3

that a joint venture did exist and that, as a result, an accounting was allegedly necessary." *Id.*

*Josephson* is thus easily distinguishable. As noted above, Mowatt's summary judgment papers argued that *even if* a joint venture had existed, Yador's only remedy would be an accounting. ECF No. 81-2, at 24. So, unlike the *Josephson* defendants, Mowatt "allow[ed] for the possibility that a joint venture did exist." *Josephson*, 2002 WL 1315604, at *2. He did not forfeit the right to seek an accounting after the jury found him liable for breach of the partnership agreement.

2. The Motion Is Not Untimely Under Federal Rule of Civil Procedure 39

Alternatively, Yador argues that Mowatt's request for an accounting is untimely under Federal Rule of Civil Procedure 39(a). Pl.'s Opp'n Br. 18-22. Rule 39(a) states that a demand for a jury trial on a given issue must be honored unless the court "on motion or on its own, finds that on [that issue] there is no federal right to a jury trial." Fed. R. Civ. P. 39(a)(2). While Rule 39(a) imposes no specific deadline on motions to strike a jury demand, courts may strike such motions if the opposing party shows "(1) an inexcusable delay by the movant and (2) prejudice as a result of the delay." *Long Beach Rd. Holdings, LLC v. Foremost Ins. Co.*, No. 14-CV-1801, 2019 WL 13072678, at *1 (E.D.N.Y. Apr. 4, 2019).

4

Yador asserts that Mowatt's request for an advisory jury verdict violates the Rule 39(a) standard. But this argument runs into two fundamental problems. First, a request for an advisory jury is not the same as a request to strike a jury demand. Indeed, the two requests are governed by different provisions of Rule 39. *Compare* Fed. R. Civ. P. 39(a) (motion to strike jury demand), *with* Fed. R. Civ. P. 39(c) (motion for advisory jury). And Yador cites no authority for the proposition that the Rule 39(a) timeliness standard also governs motions brought under Rule 39(c). Second, courts retain "discretion to permit a motion to strike a jury demand, even on the eve of trial." *Chen v. Hunan Manor Ent., Inc.*, 340 F.R.D. 85, 88-89 (S.D.N.Y. 2022). So, even if the Rule 39(a) timeliness standard applied, it would not bar the Court from entertaining the instant motion.

**B.  The Accounting Motion Lacks Merit**

Moving to the merits, Mowatt argues that the Court should treat the jury's damages verdict as advisory because New York law entitles Yador only to an equitable accounting of his share of the partnership. Def.'s Br. 9, ECF No. 181-12. Mowatt is mistaken.

"As a general New York rule, one partner may not sue another at law for damages relating to partnership affairs unless there has been a full accounting, prior settlement[,] or

5

adjustment of the partnership affairs." *Stratavest Ltd. v. Rogers*, 888 F. Supp. 35, 37 (S.D.N.Y. 1995) (citing *Pace v. Perk*, 81 A.D.2d 444, 452 (2d Dep't 1981)).  The New York Court of Appeals has not expressly adopted this rule; instead, it emerges from the state's intermediate appellate courts.  *See, e.g.*, *Pace*, 81 A.D.2d at 452; *Dalury v. Rezinas*, 183 A.D. 456, 460 (1st Dep't 1918).  Because there is no clear reason to believe the Court of Appeals would reject the Appellate Division's reasoning, we will "apply the law as interpreted by New York's intermediate appellate courts."  *Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 134 (2d Cir. 1999).

The accounting rule is a judicial creation, not a statutory one.  *See Alam v. Ahmad*, 190 A.D.3d 471, 473 (1st Dep't 2021).  Courts crafted it to serve two broad purposes.  First, the rule prevents courts from "interfer[ing] with the day-to-day management of the partnership."  *Seiden v. Gogick, Seiden, Byrne & O'Neill*, 278 A.D.2d 302, 304 (2d Dep't 2000).  Second, it reduces the risk of "piecemeal adjustment of the amounts, if any, owed by one [partner] to any other" because of ongoing legal disputes.  *Id.*; *see also Auld v. Estridge*, 86 Misc. 2d 895, 900 (N.Y. Sup. Ct. 1976) (accounting requirement ensures the "litigative presence" of all partners).

Because the accounting requirement springs from judicial policy concerns, courts do not apply it "where the

6

underlying purpose of the general rule would not be served." 20B Carmody-Wait 2d § 122:2 (Supp. 2025); *see also St. James Plaza v. Notey*, 95 A.D.2d 804, 805 (2d Dep't 1983). And those purposes would not be served here. The partnership between Mowatt and Yador dissolved well before Yador filed suit. *See* Damages Verdict Form 1, ECF No. 159 (finding that the partnership dissolved in September 2017). So, even though the business continues in operation, there is no risk that awarding a judgment will require the Court to intervene in the ongoing operations of an existing *partnership*. *See Morris v. Crawford*, 281 A.D.2d 805, 806-07 (3d Dep't 2001). Similarly, there is no risk that the Court will need to continuously assess and re-assess the value of each partner's share over time. *Id.* Because the partnership has dissolved, the operative value of those shares is fixed as of the dissolution date.

This reasoning is not novel. New York courts have consistently held that an accounting is not necessary when the partnership giving rise to the plaintiff's claims ended well before the plaintiff filed suit. *See, e.g.*, *Seiden*, 278 A.D.2d at 304 (no accounting required where "law partnership at issue [was] at an end" and all claims had accrued); *Morris*, 281 A.D.2d at 806-07 (no accounting where record showed "the parties ha[d] not conducted business as partners" for almost ten years); *St. James Plaza*, 95 A.D.2d at 805 (no accounting where the

"illegalities of which plaintiffs complain occurred during a fixed period" before the dissolution of the partnership).

At oral argument, Mowatt contended that an accounting may be necessary to ensure the "litigative presence" of all partners. Oral Arg. Tr. 4:21-5:6, ECF No. 201; *see also Auld*, 86 Misc. 2d at 900. As support, he pointed to a text message thread between Yador, Mowatt, Nile Ivey, Kenji Summers, and Chris Charles. Oral Arg. Tr. 4:21-5:6; PTX-25, at 55. In that thread, Mowatt claims to have filed paperwork showing the percentage equity shares of all five men in Trap Karaoke LLC. *See* PTX-25, at 55. This exchange, Mowatt suggests, could imply the existence of additional partners who are not parties to this litigation, and who may bring claims like Yador's in the future.

This argument fails for two reasons. First, it is contrary to Mowatt's own testimony. Mowatt testified that he had never executed an operating agreement naming multiple owners for Trap Karaoke LLC, that he ran the LLC as a "sole proprietorship," and that Yador never had equity in the LLC. Trial Tr. 650:22-654:17. Second, even if the remaining three men had been made partners, any breach-of-contract claims they brought against Mowatt would likely be time-barred. In New York, a plaintiff must bring a breach-of-contract claim within six years of the alleged breach. *Natixis Real Est. Cap. Tr. 2007-HE2 v. Natixis Real Est. Holdings, LLC*, 149 A.D.3d 127, 134

8

(1st Dep't 2017). That means that any claims the three ostensible partners had against Mowatt would have lapsed (at the latest) by September 2023 — six years after the partnership dissolved. Damages Verdict Form 1.[4]

In sum, an accounting would not serve the interests of judicial economy. So, Mowatt's motion to treat the jury's damages verdict as advisory is denied.

## II. The Motion for Judgment as a Matter of Law

Mowatt also moves for judgment as a matter of law with respect to the partnership's termination date. He argues that the jury cannot have reasonably concluded that his partnership with Yador continued until September 18, 2017, and asks the Court to hold that the partnership ended no later than October 24, 2016 (the date of an extended phone call between Yador and Mowatt, discussed below). Def.'s Br. 19. The Court declines to do so.

---

[4] There is no reason to think the doctrine of equitable tolling would rescue such claims from dismissal. "[D]ue diligence on the part of the plaintiff in bringing his action is an essential element for the applicability of the doctrine of equitable estoppel." See Simcuski v. Saeli, 377 N.E.2d 713, 717 (N.Y. 1978). If the three other remaining men (Ivey, Charles, and Summers) were indeed Mowatt's partners, they would have known about it at the time of formation. 15A N.Y. Jur. Business Relationships § 1516 ("[A] partnership does not exist between the parties prior to their having an opportunity to evaluate the proposition and give it their assent."). Yet, none of these three men have brought actions against Mowatt for breach of a partnership agreement, even though they have been aware of the dispute in this case for many months or years. Indeed, Ivey sat for a deposition. See generally Ivey Dep. Tr., ECF No. 81-27. Summers almost testified. Trial Tr. 205:7-8, 497:6-9. Charles did testify, though (tellingly on this issue) he described his contributions as limited to "freelance and contract work" as a graphic designer. Trial Tr. 487:12-23.

9

A court may judgment as a matter of law only if there is "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair-minded persons could not arrive at a verdict against it." *Connelly v. County of Rockland*, 61 F.4th 322, 325 (2d Cir. 2023). Under New York law, a partnership dissolves when "either party manifests an unequivocal election to cease the collaboration." *Scholastic, Inc. v. Harris*, 259 F.3d 73, 87 (2d Cir. 2001). So, Mowatt must demonstrate that the evidence shows — in a way that no reasonable jury could reject — that one or both men elected to withdraw from (and thereby dissolve) the partnership on or before October 24, 2016.

This he cannot do. A reasonable jury could (and did) conclude that the October call did not reveal either man's unambiguous intent to withdraw from the partnership. Indeed, the transcript of that call (entered in evidence as PTX-159A) is devoid of any plain statement by either man of an intent to leave the partnership. On the contrary, several statements would support a jury finding that Yador and Mowatt did, in fact, continue to view each other as partners. For instance, when Yador asked Mowatt if he was being "phased out" of Trap Karaoke, Mowatt reassured him that was not the case "at all." PTX-159A,

10

at 6:17-25. Mowatt went on to say that "having [Yador] involved" going into 2017 was "something [he] want[ed] to make happen." PTX-159A, at 36:5-10. And he later agreed that Yador had said "around th[e] time" of the call that he "wanted to be a part of Trap Karaoke." Trial Tr. 639:18-23.

In his briefing, Mowatt relies on several of Yador's statements on the call. Def.'s Br. 29-32. None of those, however, suggested an unambiguous intent to dissolve the partnership. For example, Mowatt points to Yador's statement that he was "literally negotiable" about his role at Trap Karaoke. *See* PTX-159A, at 6:15. This statement is most naturally read to concern Yador's role in the *management* of Trap Karaoke, not his status as a *partner* in the business. Moreover, Mowatt omits the fact that, mere seconds later, Yador expressed the concern mentioned above — that he was being "phased out" of the company, eliciting Mowatt's denial. *Id.* at 6:21. Thus, a reasonable jury could conclude that Yador was hoping to continue the partnership, albeit in a more modest working role. The same logic applies to another statement on which Mowatt relies: Yador's concession that "you don't show up to the game if you're not at the practice." *Id.* at 8:1-3. A reasonable jury could have found, given Yador's concern about being "phased out," that Yador was expressing a willingness to cede more operational

11

control to Mowatt, rather than an intent to relinquish his ownership stake or depart the partnership entirely.

Furthermore, the jury also heard evidence that the two men behaved as partners *after* the October call. This undergirds the reasonableness of the jury's finding. For instance, the jury heard that Yador was attempting to coordinate a collaboration between Trap Karaoke and the digital music service Pandora as late as 2018. *See, e.g.*, Dep. of Nicole Johnson 38:1-17, ECF No. 81-38; Tr. 468:20-473:17; PTX-218. Yador was texting Mowatt about this partnership in late 2016 and early 2017. *See, e.g.*, PTX-14, at 171-72. This evidence could support a reasonable jury's finding that Yador remained a partner beyond 2016, especially given Yador's undisputed testimony that identifying sponsors was one of his primary contributions to the partnership. *See* Trial Tr. 150:24-151:18, 342:10-343:8; Def.'s Br. 25-28 (relying on Yador's testimony that sponsorships were among his primary responsibilities).

Based on the foregoing evidence, the Court cannot conclude that no reasonable jury could have found that Yador and Mowatt intended to continue their partnership after October 24, 2016. Mowatt's motion for judgment as a matter of law is therefore denied.

## III. Conclusion

For the foregoing reasons, Mowatt's motions to treat the damages verdict as advisory and for judgment as a matter of law are denied.  The Clerk of Court is respectfully directed to enter judgment for Yador in the amount of $1,981,828, and to close this case.

SO ORDERED.

    /s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated:   September 16, 2025
         Brooklyn, New York